Stanley P. Legawiec v. Commissioner.
Legawiec v. Commissioner
Docket No. 2950-69 SC.
United States Tax Court
T.C. Memo 1970-295; 1970 Tax Ct. Memo LEXIS 67; 29 T.C.M. (CCH) 1364; T.C.M. (RIA) 70295; October 20, 1970. Filed Stanley P. Legawiec, pro se, 8890 West St., Delphi Falls, N. Y. John E. White, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1965 in the amount of $665.14. The only issue is whether petitioner has substantiated wagering losses in excess of his winnings for 1965 within the meaning of section 165(d). [1]
Findings of Fact
*68 Stanley P. Legawiec (hereinafter Stanley) was a legal resident of Delphi Falls, New York, at the time he filed his petition. He filed his Federal income tax return for 1965 with the district director of internal revenue, Buffalo, New York. Throughout 1965 Stanley was a full-time employee of General Electric Company and received wages in the amount of $6,683.03. He lived with his mother during that year and paid her no rent or other compensation for his room and board. During the year he bought a new $3,000 automobile paying about $200 down and making 1365 installment payments of $90 per month on the balance. Stanley was a frequent visitor of Vernon Downs racetrack, located 25 miles from his mother's house. The racing season, which featured nightly harness racing, extended from May 20, 1965, to October 23, 1965. Less frequently he also attended other racetracks. Sometimes he went to the track alone, but he was often accompanied by other people. On June 15, 1965, Stanley won $2,284.10 on a twin double wager at Vernon Downs. Again, on July 10, 1965, he won $811.60 on a similar wager. The racetrack operator filed Forms 1099 reporting these wins to the Internal Revenue Service. *69 Stanley included these amounts, a total of $3,095.70, in his 1965 income tax return, and he claimed a deduction of $3,095.70 as a gambling loss. Petitioner kept a book containing entries on wagering activities during the period from May 20, 1965 to July 19, 1965. In this book were entries showing gains and losses on wagers, each keyed to a particular track, race, and horse. He also kept 1,490 pari-mutuel betting tickets for the season which reflect the dates and amounts of wagers, a total of $3,397, together with the numbers assigned to the horses on which bets were placed. These tickets were dropped on the floor of his car and left there for a substantial period of time before they were collected. Racing programs for practically the entire season - which were purchased off track - were also kept. Many of these programs contain handwritten notations. Stanley's records indicate that he was present at the racetrack and placed wagers on 38 separate occasions between May 20 and July 19, 1965. He kept tickets for only 10 of the dates reflected in his book. These dates were concentrated toward the end of the period. A comparison of the losses recorded in his book with the tickets bearing *70 the same date shows: *10
Book
Tickets
Date
Race
Horse No.
Amount
Race
Horse No.
Amount
May 21
[1] D.D.
$ 28
2d
8
40
3d
5
$ 20
6th
1
25
June 10
[1] D.D.
22
[1] D.D.
22
June 15
[2] T.D.
48
[2] T.D.
48
June 16
5th
Unknown
12
[2] T.D.
20
[2] T.D.
20
6th
Unknown
40
8th
1
5
9th
Unknown
20
9th
1
10
9th
1
10
9th
2
47
9th
5
10
9th
6
36
June 17
[1] D.D.
32
[2] T.D.
126
[2] T.D.
26
4th
6
40
June 23
[1] D.D.
40
4th
Unknown
22
[2] T.D.
48
[2] T.D.
12
6th
1
4
7th
6
12
July 10
[1] D.D.
60
1st
2
40
4th
4
40
[2] T.D.
120
8th
7
5
9th
3
20
9th
3
20
9th
6
5
July 12
[1] D.D.
48
[1] D.D.
48
1st
1
2
1st
3
2
3d
1A
20
3D
1
20
3D
4
2
3D
7
2
4TH
2
$20
4TH
2
$ 20
4TH
3
4
4TH
5
2
[2] @T.D.
122
[2] T.D.
120
5th
Unknown
20
5th
2
10
5th
4
10
7th
4
60
July 13
[1] D.D.
60
[1] D.D.
62
1st
2
8
1st
8
2
2d
3
4
2d
8
2
3d
2
13
3d
2
8
4th
4
5
4th
4
5
4th
6
4
[2] T.D.
18
[2] T.D.
20
5th
5
10
5th
5
10
[3] Unknown
Unknown
14
July 15
[1] D.D.
28
[2] T.D.
28
5th
6
10
8th
8
40
*71 1366 Also disclosed by his record book is a total of $5,304 in gambling winnings, of which only $3,095.70 was reported in his income tax return. After July 19, 1965, Stanley's only record of losses is wagering tickets. The Commissioner determined that Stanley's wagering losses did not exceed his unreported gambling income for 1965 and disallowed the claimed deduction. Opinion Section 165(d) allows the deduction of "[losses] from wagering transactions * * * only to the extent of the gains from such transactions." The burden rests with Stanley to establish that his wagering losses exceeded his unreported wagering gains and the amount of such excess. As substantiation of his losses he relies upon a purported daily record of his betting and a bundle of betting tickets. However, as disclosed by our Findings, for the period during which both the daily record and the betting tickets were purportedly kept, there are many obvious discrepancies - the tickets show wagers on races other than those reported in the *72 book; the book shows bets for which there are no tickets; and, where there are purported records on the same race, the amounts recorded in the book and the face amounts of the tickets seldom correspond. Stanley testified that he normally marked the numbers of the combinations he played on the daily double and the twin double in his racing program; yet only rarely do the markings in the racing programs correspond with the tickets on those races. We can only conclude that either petitioner's records are grossly inaccurate or that all of the tickets are not his. We are compelled to note that there is nothing on the face of the tickets to show that they were purchased by Stanley, and it is common knowledge that racetrack grounds are usually littered with losing tickets. Also, his method of preserving the tickets - dropping them on the floor of his car and leaving them there for an extended period before collecting them - adds nothing to their reliability as a measure of his losses. This is especially true, in view of the fact that other people attended the races with him and they too may have inadvertently deposited their tickets on the floor of his car. Although his book contains detailed *73 entries, we are not satisfied that they were made contemporaneously with his wagering activities, or that the book doei not omit some of his transactions. The record before us contains no adequate explanation of the discrepancies between his book and the tickets. Stanley admitted that his book showed that he had winnings of $2,208.30 in excess of the wagering gains reported on his income tax return, and, despite his denials, we 1367 are not convinced that he did not have still other winnings. There is no reason to believe that the discrepancies and inaccuracies which occurred in the listing of his losses did not also occur in the listing of his winnings. Furthermore, his book shows no winnings after July 19; yet the tickets introduced in evidence indicate that he went to the track on at least 27 separate occasions after that date. The evidence is not convincing that his record of successful wagering up to that time suddenly terminated and that he never won again. Stanley introduced a savings account passbook reflecting withdrawals between July 9 and August 5 totaling $1,195 and three checks, made payable to cash in July 1965, totaling $690. He explicitly testified that the *74 proceeds of those withdrawals from his accounts were used in wagering. The total amount of these transactions ($1,885), however, does not exceed the admittedly unreported gains referred to above ($2,208.30), to say nothing of other possible winnings. Stanley's plea that the inherent nature of the burden of proving wagering losses makes it an extremely onerous one is not without merit. But the rule requiring a taxpayer to keep records "sufficient to establish the amount of gross income, deductions," and other matters required to be shown on his return, sec. 1.6001-1(a), Income Tax Regs., applies to wagering transactions as well as other sources of taxable gains and losses. And, for the reasons stated, the records here simply do not substantiate the claimed losses. Despite the absence of adequate records, this Court has allowed deductions based on estimates where the trial record as a whole showed that net losses were in fact suffered. See, e.g., Herman Drews, 25 T.C. 1354 (1956). Nevertheless, as we view the trial record here, it provides us with no satisfactory basis for estimating the amount of petitioner's losses, i.e., for concluding that his losses exceeded his unreported *75 gains. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
1. D.D. indicates the daily double. ↩
2. T.D. indicates the twin double. ↩
3. The horse named in the book does not correspond with any horse named in the program.↩